**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Randall Midge Minor, II,

Plaintiff,

v.

Yahye Mahmed Ahmed, *in his individual capacity*; and the Metropolitan Council,

Defendants.

Civil No. 25-104 (DWF/DTS)

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

This matter is before the Court on a motion for summary judgment brought by Defendants Yahye Mahmed Ahmed and the Metropolitan Council. (Doc. No. 15.) For the reasons set forth below, the Court grants Defendants' motion.

## BACKGROUND

On September 12, 2023, Plaintiff Randall Midge Minor, II, rode the light rail in St. Paul, Minnesota, after attending a Twins game in Minneapolis.[1] Minor noticed two men fighting at the other end of the train and ran to break it up. The Rear TCV shows two men fighting: one man wearing a green shirt and the other wearing a black sweatshirt. A

---

1 The Court reviewed and relies on the record evidence, including the deposition testimony of Minor (Doc. No. 21-1) and Ahmed (Doc. No. 18-1), footage from Ahmed's body-worn camera ("BWC") (Doc. No. 18-5), and three Metro Transit Train Car Videos ("TCVs") (Doc. Nos. 18-2 ("Front TCV"), 18-3 ("Middle TCV"), 18-4 ("Rear TCV")). Plaintiff also submitted the police reports of Officers Ahmed and Chi Vang. (Doc. No. 21-2.)

passenger separated the men, and Minor bearhugged the man in the green. Minor released the man in green who then exchanged words with another passenger. When the train stopped a few minutes later, that passenger pushed the man in green off the train and onto the platform. The man in green continued to yell. Minor, who stood in the train's doorway, eventually shoved the man in green, and then he removed and threw down his own jacket. Minor was briefly held back on the train by other passengers, but he eventually got off the train and ran towards the man in green.

At this point, Ahmed, who was on duty patrolling on the platform, saw Minor punching the man in green. During a pause in the fight, Ahmed believed the men were about to continue fighting and he used chemical spray on both men to prevent that from happening. Ahmed did not announce his presence or warn that chemical spray would be used. The two men separated. The man in green said: "They're trying to fight me! I'm trying to get off on Hamline. They tried to pull me off of the train!" Minor walked back onto the train and Ahmed followed after and shouted at Minor. Ahmed was in a police uniform and a yellow reflective vest. Minor did not respond to Ahmed. Some of the other passengers were telling Ahmed that the man in the green shirt started the fight. Ahmed, however, testified that he "could not hear a word that was being said" and that he "could barely hear [his] own radio."

Ahmed reentered the train through a different door and commanded Minor, who was walking away, to "come here." Minor turned around and walked back towards Ahmed. Ahmed placed his left hand on Minor's right shoulder and tried to guide Minor back towards the door. Ahmed did not use verbal commands and claimed that he did not

have time because the train was about to leave the station. Minor immediately reacted by pushing Ahmed away and yelling and cursing at Ahmed. Minor physically resisted Ahmed's attempt to hold onto him.

Ahmed pushed Minor backwards and onto the laps of passengers. Minor claims that he could not see because of the effects of the chemical spray and that he was defending himself against physical contact. Minor then pushed Ahmed across the aisle and onto other passengers. A second officer helped Ahmed get to his feet. Ahmed then drew his Taser and told Minor to get on his stomach. Minor did not get on his stomach. Ahmed shouted a second time for Minor to get on his stomach. Ahmed used the Taser to drive-stun Minor one time, causing Minor to fall onto the floor of the train. Ahmed handcuffed Minor and removed him from the train.

Minor brought this action on January 9, 2025. He asserts claims for unlawful seizure and arrest, excessive force, false arrest and imprisonment, and assault. (Doc. No. 1 ¶¶ 33-62.) Defendants move for summary judgment on all claims.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**II. Federal Claims—Qualified Immunity**

Ahmed submits that he is entitled to qualified immunity on Minor's federal claims for unlawful seizure and excessive force. The doctrine of qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

To overcome the defense of qualified immunity, a plaintiff must show that: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established

at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). The Court has discretion to decide which qualified immunity prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**A. Unlawful Seizure**

The lawfulness of Minor's arrest is evaluated under the Fourth Amendment. *See Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011). A warrantless arrest does not violate the Fourth Amendment if it is "supported by probable cause." *Id.* In addition, an officer is entitled to qualified immunity for an arrest if there is "at least arguable probable cause." *Id*. (citation modified). An officer has probable cause to make a warrantless arrest when, at the time of the arrest, the totality of the circumstances "are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Id*. (quoting *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is 'objectively reasonable.'" *Id.* (citing *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)).

Here, Ahmed approached an active fight and saw Minor punching the man in green. After Ahmed sprayed the men with chemical irritant, the man in green told Ahmed that "they" were trying to fight him and pull him off the train. To be sure, the entire incident began on the train several minutes before, but Ahmed was not on the train and therefore did not witness the events leading up to the fight. The first thing he saw was

Minor punching the man in green.[2] Based on these facts, taken in the light most favorable to Minor, it was reasonable for Ahmed to believe that Minor had committed an offense. And at a minimum, it was not objectively unreasonable for him to believe that Minor had committed an assault. Moreover, after punching the man in green, Minor retreated onto the train and physically resisted being detained. His resistance also gave Ahmed probable cause to believe that Minor was committing an offense. *See Jacobsen v. Klinefelter*, 992 F.3d 717, 721 (8th Cir. 2021) (an arrestee's physical resistance gave the deputy probable cause to believe he committed another offense by unlawfully resisting). Because a reasonable officer in Ahmed's position could reasonably believe that Minor had committed an offense, both assault and then resisting arrest, Ahmed is entitled to qualified immunity for Minor's unlawful arrest claim.

**B. Excessive Force**

Minor also alleges claims for excessive force based on Ahmed's use of chemical spray and the Taser. Excessive force claims that occur during an arrest are analyzed under the Fourth Amendment. *Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011). In determining whether the use of force is reasonable, a court balances "the nature

---

[2] Minor argues that his seizure was unlawful because Ahmed ignored exculpatory evidence. For example, Minor claims that Ahmed witnessed the man in the green shirt being removed from the train "because he was assaulting and threatening other passengers." (Doc. No. 20 at 11.) However, as explained above, Ahmed was not on the train and did not witness the man in green being aggressive. Minor also claims that other passengers told Ahmed that the man in the green was the original aggressor. Again, Ahmed testified that he could not hear them; and even if Ahmed did hear those passengers, the fact remains that Ahmed saw Minor punching the man in green.

and quality of the intrusion on the individual's Fourth Amendment interests" against the government's interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation modified). The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The reasonableness determination must make allowances for the fact that police officers make split-second judgments in oftentimes tense situations. *Id.* at 396-97. Therefore, the Supreme Court has set out the reasonableness inquiry as one that requires courts to determine "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citation modified). The proper application of the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Generally, an officer's use of force is "least justified against a nonviolent misdemeanant who does not flee or actively resist arrest and poses little threat to officers or the public." *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020). Somewhat more force may be reasonable when a suspect passively resists, which includes failing to follow police instructions. *Id*. An officer is entitled to use the force necessary to effect an arrest when a suspect "at least appears to be resisting." *Id.* (quoting *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017)). The Eighth Circuit has upheld the use

of force when a suspect is non-compliant and resists arrest or ignores law enforcement commands. *Id*.

### 1. Use of Chemical Spray

Minor argues that Ahmed used excessive force when he sprayed chemical irritant. Minor submits that because Ahmed did not announce his presence or warn that he was about to deploy the spray, and because Minor was defending himself, the force was unreasonable. The Court disagrees.

As detailed above, Ahmed witnessed Minor punching another man. Ahmed then deployed chemical irritant on both men to interrupt the fight. Ahmed testified that as he approached the men fighting, "Minor got done punching [the man in green]" but "[t]hey looked like they were about to go at it again" and that he used chemical spray to prevent the fight from continuing. (Doc. No. 18-1 at 13.) Minor claims that, at that time, Ahmed knew that Minor was defending himself. This claim is not supported by the record and, instead, the evidence shows that at the moment he deployed the spray, Ahmed had only witnessed Minor punching the man in green.

A fair warning is usually required before an officer uses pepper spray on a nonviolent misdemeanant who is not actively resisting or attempting to flee. *Drew v. City of Des Moines*, No. 21-cv-278, 2023 WL 4618688, at *7 (S.D. Iowa June 12, 2023) (citing cases); *see also , e.g., Shannon v. Koehler*, 616 F.3d 855, 863 (8th Cir. 2010) ("[A]ssuming [plaintiff] was not threatening anyone, not resisting arrest, and so on—it was not reasonable for [the officer] to use more than de minimis force against him."); *Johnson v. Carroll*, 658 F.3d 819, 828 (8th Cir. 2011) ("[I]t was unlawful to throw to the

ground and mace a nonviolent, suspected misdemeanant who was not fleeing or herself resisting arrest, [and] who posed little or no threat to anyone's safety. . . ."); *Tatum v. Robinson*, 858 F.3d 544, 549-50 (8th Cir. 2017) (finding it unreasonable to use pepper spray on a non-fleeing, non-resisting individual suspected of a non-violent misdemeanor).

These cases, however, are distinguishable from the case at hand because they involve nonviolent or non-resisting individuals. Here, in contrast, it was reasonable for Ahmed to believe, based on what he witnessed, that Minor was violent and posed a threat to the safety of others. Based on these facts, and considering the totality of the circumstances, the Court finds that no reasonable juror could find that Ahmed was objectively unreasonable to deploy chemical irritant to break up the fight between Minor and the man in green.

**2. Use of Taser**

Minor also asserts that the use of the Taser constitutes excessive force. He argues that he was a non-threatening, non-fleeing, and non-resisting suspect, making the use of the Taser unreasonable. In support, he relies on *Jackson v. Stair*, 944 F.3d 704 (8th Cir. 2019), and *Villebrun v. Nienaber*, No. 24-cv-504, 2026 WL 800044 (D. Minn. Mar. 23, 2026). In *Jackson*, the Eighth Circuit examined the reasonableness of an officer tasing a noncompliant, aggressive suspect three times. 944 F.3d at 711-13. The Eighth Circuit found no excessive force with respect to the officer's first and third uses of the Taser because the suspect was resistant and noncompliant, but found the second tasing to constitute excessive force because it occurred almost immediately after the first and the suspect was not given an opportunity to comply. *Id*. Further, in *Villebrun*, a court in this

district denied qualified immunity to an officer who tased a suspect twice—once after the suspect had stopped fleeing, was kneeling, remaining still, and had his hands on his head, and a second time after the suspect had fallen forward and was in pain. 2026 WL 800044, at *6-7. The Court found that while the suspect was noncompliant, there was an issue of fact as to whether he was actively resisting arrest. *Id.*

The facts of this case are distinguishable from those in the cases cited by Minor, which involve suspects who either were not violent or were not physically resisting at the time the Taser was used. Again here, the video evidence clearly shows that Minor punched another man and was physically resisting Ahmed's efforts to detain him. When Ahmed reached out and placed his hand on Minor's shoulder, Minor instantly shoved Ahmed and became physically combative. Minor continued to resist and shoved Ahmed onto the laps of other train passengers. During this struggle, and after a second officer arrived and helped Ahmed get back on his feet, Ahmed drew his Taser and instructed Minor to get on his stomach. While things progressed quickly, Minor did not comply after two commands. Ahmed then tased Minor one time before handcuffing him.

For his part, Ahmed cites cases in support of the objective reasonableness of his actions. For example, in *Jacobsen v. Klinefelter*, a deputy sheriff asked an individual to leave an automobile auction after he believed he observed the man trespassing. 992 F.3d at 719. The man refused and the deputy grabbed the man's arm to escort him out of the building, prompting the man to shove the deputy. *Id.* The situation escalated into a physical altercation between the man and the deputy, and the deputy and another officer eventually used additional force to subdue the man. *Id.* at 719, 722. This force included

the use of pepper spray, striking him the head, and taking him to the ground. *Id.* at 722. The Eighth Circuit noted that at the time of the disputed use of force, the deputy had probable cause to believe the man was trespassing and the man physically resisted efforts to remove him from the building. *Id.* at 721. The Eighth Circuit held that the man's physical resistance gave the deputy reasonable grounds to use additional force. *Id.*

The Court finds the decision in *Jacobsen* instructive here. Like in that case, Ahmed used his Taser only after Minor physically resisted and the situation escalated. Minor shoved Ahmed into other passengers and refused two commands to get on his stomach. Importantly, Ahmed used his taser only once. Based on this evidence and viewing that evidence in the light most favorable to Minor, the Court concludes that no reasonable juror could conclude that Ahmed used objectively unreasonable force when he tased Minor.

### C. Clearly Established

Even if the Court were to conclude that factual issues exist as to the question of whether Ahmed unlawfully detained Minor or used excessive force, Ahmed would still be entitled to qualified immunity because it was not clearly established that Minor's detention or Ahmed's use of force was prohibited. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As of September 2023, it was clearly established the use of excessive force and a warrantless arrest unsupported by probable cause violated the Fourth Amendment. *See*

*Ehlers*, 846 F.3d at 1012; *Nieters v. Holtan*, 83 F.4th 1099, 1106 (8th Cir. 2023). It was not clearly established, however, that an officer would have violated those rights by using chemical spray to break up a violent interaction between two men on a train platform, using a Taser to gain control over a physically resisting arrestee, or by arresting an individual after witnessing him punching another person and later resisting arrest. Based on the discussion of the relevant cases above in relation to the facts here, Minor cannot establish that Ahmed violated a clearly established right such that its unconstitutionality was beyond debate. For this additional reason, Ahmed is entitled to qualified immunity.

## III. State-Law Claims—Official Immunity

Minor also brings claims under state tort law for false arrest and assault. Ahmed invokes official immunity for these claims. Under Minnesota law, public officials are immune from tort liability for their discretionary acts unless the "public official's exercise of independent judgment or discretion is a willful or malicious wrong." *Jepsen ex rel. Dean v. County of Pope*, 966 N.W.2d 472, 482 (Minn. 2021). To conduct an official immunity analysis, a court must first determine whether the conduct at issue involved discretionary or ministerial acts. *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006). Here, the parties agree that Ahmed's actions at issue—use of force and arrest—were discretionary. (Doc. No. 17 at 22; Doc. No. 20 at 17.) The Court agrees and moves to the next step of the analysis: whether Ahmed's actions were malicious or willful.

Malicious or willful means that the official "intentionally performs a wrongful act without legal justification or excuse or willfully violates a known right of the plaintiff." *Jepsen*, 966 N.W.2d at 482. In contrast to qualified immunity, malice involves both a

subjective and an objective inquiry, although the Minnesota Supreme Court has explained that the analysis relies more on the "objective inquiry into the legal reasonableness of an official's actions." *State ex rel. Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994). In other words, a court looks at "whether the official has intentionally committed an act that he or she had reason to believe is prohibited." *Id.* at 571-72. "[W]hether an officer acted maliciously is usually a question of fact for the jury." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 664 n.5 (Minn. 1999). However, a court should rule in favor of a defendant if "no reasonable jury could find the officers acted with bad faith or malicious intent." *Smith v. City of Minneapolis*, 754 F.3d 541, 549 (8th Cir. 2014) (citation modified).

Malicious intent includes situations where an official intentionally committed an act that they had reason to believe is prohibited. For the reasons discussed above with respect to the qualified immunity analysis, including the determination that no reasonable juror could conclude that Ahmed's actions were objectively unreasonable, the Court finds the record is insufficient to show that Ahmed acted with bad faith or malice during the incident at issue. Much of Minor's argument on malice relies on comments Ahmed made two years after the incident, after he had viewed the video of the incident and learned that the man in green initiated a separate fight with a passenger on the train. Even if Ahmed, upon reflection and in light of evidence that he did not have at the time of the arrest, believes he might have handled things differently, that does not make his actions at the time of the incident unreasonable or malicious. *See Rico v. State*, 472 N.W.2d 100,

106-07 (Minn. 1991) (explaining that malice requires an intentional, wrongful act without legal justification *at the time* of the incident).

No reasonable jury could conclude that Ahmed acted with malicious intent or bad faith. Therefore, Ahmed is entitled to official immunity on Minor's state-law claims. And because Ahmed is entitled to official immunity, the Metropolitan Council is entitled to official immunity under the doctrine of *respondeat superior*. *See Watson ex rel. Hanson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 414 (Minn. 1996); *Pletan v. Gaines*, 494 N.W.2d 38, 42 (Minn. 1992).

**CONCLUSION**

The Court concludes that Officer Ahmed is entitled to qualified immunity on Minor's wrongful arrest and excessive force claims and official immunity on Minor's state-law tort claims. In addition, the Court concludes that the Metropolitan Council is entitled to vicarious official immunity on Minor's claims.[3]

**ORDER**

Based on the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment (Doc. No. [15]) is **GRANTED**.

---

[3] Minor does not assert *Monell* liability against the Metropolitan Council. (Doc. No. 20 at 20.)

2. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 19, 2026

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge